## HAGERSTOWN FURNITURE COMPANY *v.* CLARENCE H. BAKER ET AL., EXECUTORS.

[No. 50, April Term, 1928.]

*Decided July 16th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, and PARKE, JJ.

*Henry F. Wingert* and *W. LeRoy Ortel,* for the appellant.

*Daniel W. Doub,* with whom was *Edward Oswald, Jr.,* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

In this case, the appellees, Clarence H. Baker and Daisy S. Harper, executors of Solomon Baker, deceased, on the second day of December, 1927, filed their bill in the Circuit Court for Washington County, against the Hagerstown Furniture Company, a corporation doing business in that county, asking that a receiver, or receivers, be appointed for it. The bill alleged that the company was incorporated in 1885, with a capital stock of $9,000, consisting of ninety shares each of the par value of one hundred dollars. It then alleged that its stockholders at the time of filing the bill were Henry F. Wingert, ten shares; Miller Wingert, ten shares; Lewis P. Wingert, ten shares; William Wingert, ten shares; Martha A. Wingert, ten shares; Mrs. Julia Reamer, ten shares; John G. Ernst, fifteen shares; and Solomon Baker, deceased, fifteen shares. At such time Henry F. Wingert, William Wingert, Lewis P. Wingert, and John G. Ernst were the directors of the corporation. The vacancy caused by the death of Solomon Baker, a director, had not then been filled. Its officers were Henry F. Wingert, president; William Wingert, vice-president; Lewis P. Wingert, treasurer; and John G. Ernst, secretary.

The bill further alleged that, at that time, the Hagerstown Furniture Company, which we will hereafter call the "furniture company" was indebted to the estate of Solomon Baker in the sum of $2,500, consisting of two notes, one for the sum of $1,500 and the other for $1,000, which were then due and owing, and for the payment of which demand had been made, but because of the impaired condition of the furniture company's credit it was unable to pay the same or to borrow money with which to pay them. In addition thereto, the furniture company was owing the First National Bank of Hagerstown, Md., $16,637.14, with interest from November 12th, 1927, and costs, upon a judgment entered upon the four notes of the furniture company, for the following amounts: (1) $5,000, dated April 14th, 1927, payable thirty days thereafter, signed by Lewis P. Wingert, treasurer; (2) $2,000, dated April 24th, 1927, payable thirty days after date and signed by John G. Ernst, secretary; (3) $3,000, dated September 25th, 1927, payable sixty days after date and signed by John G. Ernst, secretary; (4) $5,000, dated October 17th, 1927, payable sixty days after date and also signed by John G. Ernst, secretary. It was alleged in the bill that the first of these notes was borrowed to loan to the Hagerstown Silk Company, a corporation in which William Wingert had a controlling interest, and in which the furniture company, John G. Ernst, and Solomon Baker had no interest. The money so borrowed to loan to the silk company was under a resolution passed on April 14th, 1927, at a meeting of that date, attended by Henry F. Wingert, William Wingert, Lewis P. Wingert, John G. Ernst, and Solomon Baker. That in the passage of said resolution Henry F. Wingert, William Wingert and Lewis P. Wingert voted in the affirmative, and John G. Ernst and Solomon Baker voted in the negative.

The bill further alleged that, since 1924, Henry F. Wingert, William Wingert, and Lewis P. Wingert, three of the directors of the company, have borrowed large sums of money from the furniture company for themselves, the silk company and the Antietam Knitting Company, two corporations, in

which they were largely interested. That much of the money was borrowed without the knowledge and authority of Ernst and Solomon Baker, the other two directors of the furniture company, and without the authority of the board of directors of that company. The first three of these directors, being a majority and representing a majority of the stock of the company, used their positions to borrow money from the furniture company for themselves and for corporations in which they were interested; that the furniture company holds notes against the Hagerstown Silk Company and William Wingert, Henry F. Wingert, and Miller Wingert, aggregating $2,275; a note against Henry F. Wingert and Miller Wingert for $500, and five notes against Henry F. Wingert, William Wingert, and Miller Wingert, amounting in all to $3,500.

The bill alleged that the aforesaid notes were given for money received by the Hagerstown Silk Company and by Henry F. Wingert, William Wingert, and Miller Wingert, without the authority of the board of directors of the furniture company. It also alleged that the Antietam Knitting Company, a corporation in which William Wingert had a controlling interest, and in which Ernst and Solomon Baker had no interest, was indebted to the furniture company in the sum of $150, on a check signed, "Hagerstown Furniture Co. by Lewis P. Wingert, treasurer," in February, 1927, for $700, without the authority of the board of directors of the furniture company.

The bill further alleged that a petition had been filed in the United States District Court for the District of Maryland against Henry F. Wingert, Lewis P. Wingert, Miller Wingert, Martha A. Wingert, Hagerstown Silk Company, and the Antietam Knitting Company, to have them declared bankrupts and the matter of their adjudication was, at that time, pending in said court; that the forty shares of the capital stock of the furniture company in the name of Henry F. Wingert, Miller Wingert, Lewis P. Wingert, and Martha A. Wingert, had been given as collateral for notes due by them to the Hagerstown Bank, and ten shares of the furniture company given as collateral for notes due by them to

the Mechanics Loan & Savings Bank of Hagerstown, Md., for sums greatly in excess of the value of said stock; and that the said H. F. Wingert, Miller Wingert, Lewis Wingert, and Martha A. Wingert have, as a matter of fact, no interest in the furniture company; that Henry F. Wingert, president of the furniture company, had made demand on that company for money alleged to be due him as salary, though he was, at the time of such demand, indebted to the furniture company in a sum larger than that claimed to be owing him as salary; and, unless restrained by the court, Lewis P. Wingert, treasurer, is liable to draw money out of bank and pay the same to Henry F. Wingert, when the same should be applied in part payment of Henry F. Wingert's indebtedness to the furniture company.

The bill further alleges that the furniture company, since its organization in 1885, to the death of Solomon Baker in May, 1927, had been under the direct management of Solomon Baker and John G. Ernst; that it was well managed, enjoyed a good name in the business world; and its credit high, and, until 1925, was a very prosperous company, but since the entry of the confessed judgment against it, in favor of the First National Bank of Hagerstown, for the sum of $16,637, on November 12th, 1927, and the creation of the debt owing to it by the silk company and Henry F. Wingert, William Wingert, Lewis P. Wingert and the Antietam Knitting Company, it is unable to meet its obligations and to buy material and conduct its business in the usual manner; that the said furniture company "is not insolvent" and "has assets amply sufficient to pay all its debts and obligations, but in order to protect the assets and business of the said company and continue the business of the company, it will be for the benefit of the creditors and stockholders that a receiver or receivers be appointed to take charge of the property, assets and business of the company and continue to operate the same under the direction of this court until the same can be sold and the proceeds applied to the payment of its debts and the remainder to the stockholders of the company."

The furniture company, through its president, Henry F. Wingert, filed its answer, in which it admitted the incorporation of the furniture company in 1885, the amount of its capital stock, the holders of such stock, and the amount alleged to be due and owing by it to the estate of Solomon Baker. It admitted the existence of the notes upon which judgment by confession was entered against it in favor of the First National Bank for the amount named in the bill, but alleged that the judgment was entered without knowledge or consent of the defendant, and that two of the notes upon which judgment was entered were not due at the date of the entry of the judgment; and that the judgment entered was not the "usual judgment by confession" but entered on judgment notes and without the consent of the defendant. It likewise admitted that the $5,000 borrowed of the First National Bank of Hagerstown was borrowed to be loaned to the silk company, but denied that Ernst and Baker voted against the resolution upon which the loan was made. It also admitted that money was loaned to Henry F. Wingert and William Wingert, the exact amount of which was not available to it at the time, but denied that Lewis P. Wingert had borrowed from the furniture company any money for the use of the Hagerstown Silk Company or the Antietam Knitting Company, or for himself, and also denied that any money or sums of money loaned by the Hagerstown Furniture Company to Henry F. Wingert and William Wingert were borrowed without the knowledge or consent of Ernst or Baker, or without the authority of the board of directors of the company, and averred that it was not advised as to William Wingert's interest in the Antietam Knitting Company, nor was it advised as to the Antietam Knitting Company's indebtedness to the furniture company. It, however, admitted the allegation of the bill that a petition in bankruptcy had been filed against Henry F. Wingert, William Wingert, Lewis P. Wingert, Miller Wingert, and Martha A. Wingert, and the Hagerstown Silk Company, and the Antietam Knitting Company. It also admitted the allegations that the forty shares of stock of the furniture company, in the name

of Henry F. Wingert, Miller Wingert, Lewis P. Wingert, and Martha A. Wingert, had been given as collateral for notes due by them to the Hagerstown Bank, and ten shares given as collateral for notes due and owing by William Wingert to the Mechanics Loan & Savings Bank of Hagerstown, but, it seems, denied the allegation that the sums borrowed thereon were in excess of the value of the stock, and that they had no interest in the company. The answer denied that the furniture company was unable to meet its obligations and to buy material and conduct its business in the usual manner, and that it would be for the benefit of the creditors and stockholders that a receiver or receivers be appointed and that the same was necessary to protect the assets and business of the company. The answer further avers that Henry F. Wingert, president of the company, had been appealed to whenever the company needed funds to meet its obligations and that he, as president, has not been advised of any serious or pressing need for funds or for any serious financial embarrassment of the company. This answer was filed December 14th, 1927.

On April 16th, 1928, "the president, directors and company of the Hagerstown Bank, a corporation, and John G. Ernst, Victor E. Cushwa and Clarence H. Baker" filed their petition in this case, in which they expressed a desire to be joined with the plaintiffs Clarence H. Baker and Daisy A. Harper, executors of Solomon Baker, deceased, and asked to be made parties plaintiff with them and be allowed to join in the prayer asking that receivers be appointed for the furniture company.

In this petition it was alleged by the bank that they held, at that time, forty shares of the stock of the furniture company, as pledgee of Henry F. Wingert, Miller Wingert, Lewis P. Wingert and Martha A. Wingert, viz: ten shares of stock in the name of Henry F. Wingert, ten shares of the stock in the name of Miller Wingert, ten shares in the name of Lewis P. Wingert, and ten shares in the name of Martha A. Wingert. This stock they alleged was transferred to the bank as pledgee under a decree of the Circuit Court for Washington County in No. 10677 Chancery, passed on the 31st day of

March, 1928, in a proceeding instituted by the president, directors and company of the Hagerstown Bank against Henry F. Wingert, president of the furniture company, to have said stock transferred to it, and the proceeding in that case was, by said petition, made a part of it.

The petition further alleged that of the stock of the furniture company, fifteen shares were held by Ernst, ten shares by Victor N. Cushwa, which last named shares were bought by Cushwa from the Mechanics Loan & Savings Bank, pledgee of William Wingert, but for which he held no certificate, as Henry F. Wingert, the president of the furniture company, had refused to issue a new certificate to him for the same, and eleven shares by Carence A. Blaker.

The petition further alleged that the management of the furniture company, notwithstanding the above alleged facts, was still in the hands of Henry F. Wingert, president and director; William Wingert, vice-president and director; Lewis P. Wingert, treasurer and director; and John G. Ernst, secretary and director; that because of the pendency in the United States District Court for the District of Maryland of the bankruptcy proceedings against Henry, William and Lewis Wingert, the indebtedness of Henry F. Wingert, William Wingert, and Miller Wingert to the furniture company and their individual indebtedness to numerous persons, banks, and corporations, their credit, as well as the credit of the Hagerstown Furniture Company, had been impaired and damaged, so that the business of that company could not properly be conducted under their management.

It was further alleged that the bank filed its proceedings against Henry F. Wingert, president, to have said stock transferred to it as pledgee, and, after the passage of the decree directing said stock to be so transferred, the bank and other stockholders made written requests to John G. Ernst, secretary, to call a special meeting of the stockholders to remove Henry F. Wingert, president and director, William Wingert, vice-president and director, Lewis P. Wingert, treasurer, and to elect other directors in their place; that in response thereto John G. Ernst, secretary of the furniture

company, on April 3rd, 1928, sent written notices to stockholders that a special meeting of the stockholders' would be held at the time and place therein stated, for the purposes aforesaid. But William Wingert, Henry F. Wingert, Miller Wingert, and Martha A. Wingert, filed a bill in the equity court for Washington County, No. 10745, to enjoin the president, directors and company of the Hagerstown Bank, pledgee, from voting the stock so acquired by the bank as pledgee, and an order was passed requiring the bank to show cause, on or before the date named therein, why the prayer of the petitioners should not be granted, and asked that the proceeding in No. 10745 also be made a part of the petition, stating that a certified copy thereof would be filed if desired by the court, the defendant, or any of the parties to the cause. What the court's final action was upon this application for an injunction is not alleged by the bill or disclosed by the record. The petition then alleged that the plaintiffs were the owners of a large majority of the stock of the said furniture company.

In the record are found the proceedings in the two equity cases Numbers 10677 and 10745. It does not appear from the record that any evidence was taken in the case before us (No. 10620), though in the proceedings in No. 10677, which were made a part of said petition filed in this case, evidence was taken in support of the allegations of the bill filed in that case.

On the 16th day of April, in the year 1928, the court passed its decree in this case, the decree from which the appeal has been taken, where it was said:

"Upon the aforegoing bill, exhibits, affidavits and request of a large majority of the stockholders of the Hagerstown Furniture Company of Washington County it is ordered and decreed by the Circuit Court for Washington County, * * * that Victor M. Cushwa and John G. Ernst be and they are hereby appointed receivers of said company (the Hagerstown Furniture Company), with full power and authority to take charge and possession of all its property, real and personal, and all of its goods, chattels, machinery and equipment and all of

its merchandise, books, papers and effects and to collect all outstanding debts due to said company," and the said Henry F. Wingert, president and director, William Wingert, vice-president and director, Lewis P. Wingert, treasurer and director, and John G. Ernst, secretary and director, were thereby directed "to yield up and deliver unto the said Victor M. Cushwa and John G. Ernst, receivers, as aforesaid, possession of all the property real and personal of said company, including all books, accounts, papers and effects of said company, including all money in bank and claims due said company subject, nevertheless, to the further direction of this court." And, until the further order of the court, the receivers were authorized to conduct the operation and management of the company and to "keep it a going concern."

The power to appoint a receiver is one of the prerogatives of a court of equity, exercised in the aid of its jurisdiction in order to enable it to accomplish, as far as practicable, complete justice between the parties before it. 23 R. C. L. 32. It is a discretionary power, "to be exercised with great circumspection, and only in cases where there is fraud or spoliation, or imminent danger of the loss of the property, if the immediate possession should not be taken by the court; and these facts must be clearly proved. But where these conditions have been fully met, courts do not hesitate to appoint receivers over the property of corporations, for the benefit of all concerned." Davis v. U. S. Electric Co., 77 Md. 40; Clark v. Ridgely, 1 Md. Ch. 70; Blondheim v. Moore, 11 Md. 374; State v. Railroad Co., 18 Md. 215; Voshell v. Hynson, 26 Md. 83; Haight v. Burr, 19 Md. 130; Shanon v. Wright, 60 Md. 520; Balto. Skate Mfg. Co. v. Randall, 112 Md. 411; Steel's Stores v. Buckingham, 143 Md. 680.

"The right to call into action this power of a court of equity exists as well in a stockholder of a corporation, as in a creditor, and where the acts of directors or officers are of such a character as to amount to a gross mismanagement of the business of the corporation or a misapplication of its assets to the injury of the stockholders or creditors, a receiver will be appointed." 23 R. C. L. 17.

In this case the executors of a deceased stockholder and director of the company filed their bill asking for the appointment of a receiver or receivers for the company upon the grounds hereinbefore stated. The furniture company answered this bill, admitting some of the allegations and denying others. Thereafter other stockholders, as well as creditors of the company, were, upon their application, made parties plaintiff to the bill filed, and in their petition additional allegations were made as ground for the relief sought.

There was no evidence taken under the bill and answer in this case, although there was evidence taken in No. 10677 Chancery, instituted to require Henry F. Wingert, president of the company, to transfer to the Hagerstown Bank, as pledgee, the stock held by it as collateral, and the proceedings in that case, including the evidence taken therein, were made a part of the petition in which said stockholders and creditors asked to be made parties plaintiff to the bill in this case. It was because of the failure of the plaintiffs to take evidence in the case before us, in support of the allegations of the bill, that it is claimed by the defendant that the relief sought should not be granted.

A receiver may be appointed without notice to the defendant of the application for the appointment of such receiver, and thus it follows that evidence is not essential to the appointment of a receiver. The court, however, should "exercise extreme caution in the appointment of receivers on *ex parte* applications, and be careful that a proper case is presented before it acts; and it should not be done without notice to the party whose property is to be affected, except in cases of the greatest emergency, demanding the immediate interference of the court." 23 *R. C. L.* 38; *Balto. Skate Mfg. Co. v. Randall, supra; Steel's Stores v. Buckingham, supra.*

The receivers in this case were not appointed upon an *ex parte* application and the corporation had full opportunity to answer the bill, which it did, and in its answer it admitted many of its allegations. As to these admitted allegations, no

evidence was necessary in support of them, as such admissions had the effect of proof.

It is admitted by the defendant that, at the time of the filing of the bill in this case, the furniture company was indebted unto the estate of Solomon Baker, deceased, in the sum of $2,500 upon two notes: one for $1,500, dated August 10th, 1923, with interest from August 10th, 1926; and the other for the sum of $1,000, dated October 24th, 1923, with interest from October 24th, 1926, copies of which notes were filed with and made a part of the bill. The executors of Solomon Baker, plaintiffs in these proceedings, have made demand upon the company for the payment of said indebtedness, but it has not been paid, as the company has no money with which to pay it. It was also indebted, at the time, to the First National Bank of Hagerstown, upon a judgment in the sum of $16,637.14, entered upon four notes given by the furniture company, two of which were dated in April, 1927, and the others in September and October of the same year. Of the money so borrowed from the First National Bank of Hagerstown, $5,000 were borrowed to loan to the Hagerstown Silk Company, a corporation largely owned, operated, and controlled by the Wingerts, and in which the furniture company, and Ernst and Baker, directors and stockholders of the furniture company, had no interest whatever. The bill alleged that this money was loaned upon a resolution passed by the votes of the three Wingert directors against the negative votes of Baker and Ernst. The defendant denied in its answer that Baker and Ernst voted against such resolution. The fact, nevertheless, remains that such loan was made to the silk company, against which proceedings in bankruptcy were pending in the United States District Court at the time of the filing of this bill, only a short time after the loan was made. In addition to this the furniture company, through its directors, Henry F. Wingert, William Wingert, and Lewis P. Wingert, a majority of the board of directors, loaned at different times within the period of three years prior to the filing of the bill, including those serving as directors of the company, an amount aggregating $4,775, in violation of arti-

cle 23, section 87, of the Code, which provides that "no loan of money shall be made by any corporation to any stockholder or director therein," which indebtedness was unpaid at the time the bill was filed. It was also admitted that at said time of the filing of the bill, a petition had been filed in the United States District Court for the District of Maryland, and was then pending therein, not only against the silk company and the knitting company, to which the furniture company had loaned money, but also Henry F. Wingert, William Wingert, and Lewis P. Wingert, directors of the furniture company, Miller Wingert, their brother, and Martha A. Wingert, their sister, to have them declared bankrupts.

In the petition filed by the Hagerstown Bank, asking to be made a party plaintiff in the bill, it was alleged, and not contradicted by the defendant company, that the entire stock of the company held by Henry F., Lewis P., Miller, and Martha A. Wingert, amounting to forty shares, at the par value of one hundred dollars per share, was at such time held by the Hagerstown Bank, to secure an indebtedness of more than $100,000, which stock, by the order of the court, has since been transferred to said bank, as pledgee. It was then alleged by the bank that the indebtedness so owing to it was in excess of the value of said stock, though such allegation was denied by the defendant. The ten shares of William Wingert, his entire holdings of the stock of said company, had then been pledged as collateral to the Mechanic's Loan & Savings Bank of Hagerstown, and were thereafter sold by that bank to Victor M. Cushwa, one of the plaintiffs, though he had not received a certificate therefor, because of the refusal of Henry F. Wingert, the president of the furniture company, to issue a new certificate to him for the same.

It is further alleged in the bill, which we have said was filed under oath, that because of the loans wrongfully made to the Wingerts by the furniture company, and the creation of the debt with the First National Bank of Hagerstown, made in part to enable the furniture company to make a loan to the silk company, then insolvent, or if not, on the verge of insolvency, and which fact was known, or should have been

known, to the Wingerts, who were largely interested therein, greatly impaired the credit of the furniture company and rendered it unable to successfully operate and conduct its affairs. In reply to this allegation the company averred that Henry F. Wingert, president of the company, had been appealed to whenever the company needed funds to meet its obligations, and he had not been advised "of any serious or pressing need for funds for any serious financial embarrassment of the company." The fact that Henry F. Wingert had in the past rendered financial aid to the company when it needed such aid is an insufficient answer to this allegation of the bill, for his condition is now such that he is no longer able to render financial aid to the company.

It is shown from these facts that the Wingerts, including those serving as directors, had little or no financial interest in the affairs of the furniture company, their stock had first been delivered as collateral to creditors from whom they had borrowed large sums of money, and, as stated in the bill, greatly in excess of the value of the stock, and thereafter, because of their failure to pay the debt so borrowed, at maturity, the stock was either sold or transferred under order of the court to the creditor or creditors as pledgee. In addition thereto, the facts stated disclose a willingness and readiness on the part of Henry F., William, and Lewis P. Wingert, as directors, in utter disregard of the interest of the furniture company, to loan its money to other corporations, in which they were interested, which were either insolvent, or on the verge of insolvency, with little probability of their ever being able to repay to the furniture company the money so borrowed; and further to wrongfully lend the money of the company to themselves and other stockholders, in violation of the statute, amounting to a misapplication of its funds.

The Wingerts, serving as directors of the furniture company, having no longer any real interest in its affairs, and having shown a disposition to dispose of its money and funds in the furtherance of their own individual interests, to the loss and injury of the company and its stockholders, we are impressed with the fact that, should the present management

be allowed to continue in the control of its affairs, the property and assets of the company will be in imminent danger of loss and injury. Consequently, we cannot escape the conclusion that the order appealed from appointing receivers should be affirmed, in order that those really interested in the welfare of the company, who have asked for their appointment, may be protected in their rights. We will therefore affirm the decree appealed from.

*Decree affirmed, with costs.*